**Barbara A. QUIGLEY, et al.**

v.

**TOWN OF GLOCESTER, et al.**

**No. 86–337–Appeal.**

Supreme Court of Rhode Island.

Feb. 13, 1987.

Jean Rosiello, Michael Murray (Asquith, Merolla, Anderson, Ryan & Wiley), Providence, for plaintiff.

Robert G. Flanders, Jr. (Edwards & Angell), Providence, for defendant.

Before FAY, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ.

OPINION

KELLEHER, Justice.

This controversy is before this court on an appeal from a Superior Court judgment wherein a trial justice ruled that the Glocester Town Council lacked the jurisdiction to enact a comprehensive revision of the town's zoning ordinance because it failed to comply with the then-existing notice requirements set forth by the General Assembly.

All plaintiffs are owners of real estate parcels located in Glocester. On November 21, 1979, the town council adopted a comprehensive revision to Glocester's zoning ordinance. The November hearing was held following an October 24, 1979 publication of a verbatim copy of the proposed ordinance in the Woonsocket Call, a newspaper of general circulation that is distributed in the Glocester area. The notice also

included a copy of the town's zoning map with the proposed changes in the zoning classifications delineated thereon. During each week that followed the October publication, small block advertisements were inserted in the Call alerting the reader of the time and place of the November 21 meeting.

Prior to the adoption of the 1979 revision, Glocester's zoning map and ordinance provided for five different zoning districts. They were R-2, A-2, B-1, B-2, and industrial. In this controversy we are concerned solely with the R-2 and A-2 districts, but the holding in this opinion shall apply to B-1, B-2, and industrial designations—uses that are commercial or industrial in nature. Prior to the November 1979 revision, any portion of Glocester's zoning map having the designation R-2 permitted residential uses, including the construction of a single-family residence, provided the residence was built on a parcel that contained a minimum of two acres. The A-2 district permitted agricultural uses. The owner of a lot situated in an area on the zoning map designated A-2 could erect a single-family dwelling on the lot, provided that it had a minimum acreage of two acres.

The 1979 revision created six districts. The R-2 district was retained, the A-2 district was discarded. It was replaced by an A-3 district and an A-5 district. The A-3 and A-5 districts permitted agricultural uses. Single-family residences could be constructed in an A-3 district on a lot as long as the parcel on which the structure was to be located consisted of at least three acres. The owner of a lot in an area designated as A-5 could build a single-family residence, providing that the parcel contained a minimum of five acres. The November revisions also called for increases in the area requirements, particularly in regard to minimum frontages and front-yard-depth requirements in areas designated residential and agricultural. Less than a month following its November meeting, the council amended the revision by deleting the A-5 district and replacing it with an A-4.

The validity of the 1979 revisions made at the November and December council meetings has been challenged by owners of three parcels of real estate in Glocester. Barbara Quigley is the owner of a parcel of real estate situated in an area on the zoning map that in early November 1979 was designated A-2 and subsequently was changed to A-5 in November and again to A-4 in December. Her parcel contains a farmhouse and a barn. Barbara Quigley emphasizes that the November and December changes to the zoning map decreased her ability to subdivide her property because of the increase in the acreage requirements and the minimum street frontage required in the newly established districts.

Alan and Nancy Whitford reside in Glocester on Snake Hill Road. The Whitfords own a forty-acre parcel that was in an area designated A-2 and was subsequently changed to A-5 and then to A-4. They had planned to build a residence on the rear portion of their parcel together with a roadway that would begin at the edge of Snake Hill Road and terminate at the proposed residence's front door; however, the new requirement of at least a 350-foot frontage makes this contemplated use unlawful.

Thomas E. Hefner and Gerald P. Cobleigh do not reside in Glocester, but they are the owners, as tenants in common, of a parcel of land situated on Jackson School House Road. At the beginning of November 1979, the parcel, which consists of slightly more than five acres, was designated on the zoning map as being in an R-2 area where the minimum acreage for a single-family dwelling was two acres. As a result of the November and December 1979 revisions in the map, the Hefner/Cobleigh parcel was designated on the zoning map at one point as A-5 and after the December meeting, A-4. Consequently, the Hefner/Cobleigh parcel now consists of one minimum-size lot, rather than a pair of minimumsize lots. Hefner had attended the December meeting and there lodged an

objection to the changes enacted earlier in November. He testified in the Superior Court that his failure to participate in the November hearing was a result of his being totally unaware of the pending November 1979 proposal until it had already become a *fait accompli*.

One elementary proposition that is applicable when considering proposed modifications of a zoning ordinance is that adequate notice of the modifications is a jurisdictional prerequisite. *DeLucia v. Town of Jamestown*, 107 R.I. 179, 265 A.2d 636 (1970); *R.I. Home Builders, Inc. v. Budlong Rose Co.*, 77 R.I. 147, 74 A.2d 237 (1950). In *Federal Building & Development Corp. v. Town of Jamestown*, 112 R.I. 478, 485–86, 312 A.2d 586, 590–91 (1973), this court stated that adequate notice of a public hearing on the possible enactment of extensive changes in a zoning ordinance must be such as to (1) reasonably inform the landowners in the community of the nature of the proposed change and the zoning classifications that will be effected thereby, (2) enable the landowners in the community to ascertain from the notice whether the proposed change would affect zoning classifications that govern the present use of their land, and (3) be readily understandable to the intended reader, the average citizen at large, rather than one versed in the intricacies of zoning law. Similar sentiments were subsequently repeated in *Golden Gate Corp. v. Town of Narragansett*, 116 R.I. 552, 359 A.2d 321 (1976), where we were presented with a challenge to a March 1974 adoption by the town of Narragansett of a major overhaul of the town's zoning ordinance. There the town officials had published in the local press, in its entirety, the proposed ordinance and zoning map. We also acknowledged that the principles set forth in the Jamestown case could be overly broad and unduly burdensome and expensive. Accordingly, we said that if a municipality updates its zoning legislation, the requirements of due process would be satisfied by the publication of a notice of a hearing that: (1) indicates that a comprehensive revision will be taking place, (2) advises people where and when a map of the proposed rezoning and accompanying text may be examined, and (3) indicates that the proposals may be changed as a result of further study or because of the views expressed at the public hearing. *Id.* at 560, 359 A.2d at 325.

At the January 1976 session of the General Assembly, House Bill 76 H 7331 was introduced. This proposal contemplated significant changes in both G.L.1956 (1970 Reenactment) § 45–24–4, which relates to the notice to be given when a comprehensive revision of a municipal ordinance is before a local legislature, and to § 45–24–4.1, which relates to proposed ordinances that seek amendments of a zoning ordinance as it would be applied to a specific parcel of real estate. In essence, the bill, as introduced, provides that the initial newspaper announcement of a revision of the zoning ordinance or the amendment of the ordinance as it relates to a single real estate parcel would consist of a verbatim copy of the entire comprehensive revision or of the complete amendment, depending upon what proposal was before the town or city council. While 76 H 7331 was pending in the House of Representatives Corporations Committee, § 45–24–4 was the subject of an amendment that states that "[w]henever a general ordinance includes amendments which make changes in the zoning maps, except for previously approved zoning board approvals, the provisions of § 45–24–4.1 shall be mandatory." P.L.1976, ch. 114, § 1. The House Corporations Committee recommended the passage of 76 H 7331. The amended bill passed both branches of the General Assembly and became effective without the signature of the Governor on May 24, 1976. The bill was then designated P.L.1976, ch. 114.

The issue before the trial justice, as it is before us, was and is the extent of notice required when a municipal legislature is considering a comprehensive revision to its zoning ordinance and map. The trial justice concluded that § 45–24–4, as amended

by P.L.1976, ch. 114, § 1, required that individual notice be given to every property owner affected by the changes in the town of Glocester zoning map proposed in the general revisions of November 1979 and the additional modifications at the following December meeting. The trial justice ruled that because the requisite notice of the November 1979 revision was not given by the town council, it lacked jurisdiction to revise the town's zoning ordinance. The trial justice also observed that since the December 1979 amendments were predicated on the previous November's revisions, both the revision and the amendment were held null and void. The court ordered that the town of Glocester zoning ordinance and zoning map be restored to the terms and conditions existing prior to November 21, 1979. The sole issue before us is whether the trial justice erred in ruling that Glocester's 1979 revised zoning ordinance is a nullity.

We once again must resort to our oft-stated principles of statutory construction. Our paramount task, as always, is to ascertain the intent behind the enactment of a piece of legislation and effectuate that intent whenever it is lawful and within the competence of the Legislature. *Dunne Leases Cars & Trucks, Inc. v. Kenworth Truck Co.*, 466 A.2d 1153 (R.I.1983). While we focus on legislative intent, where no ambiguity exists, the plain words of the statute must be looked to and must be construed so as not to defeat the obvious purpose of the statute. *Craig v. Pare*, 497 A.2d 316 (R.I.1985).

Keeping the above-stated principles ever in mind, we turn now to the statute at issue. Section 45–24–4 read as follows during the month of November and December of 1979:

"Hearings on general ordinances.—No such ordinance which is general in scope shall be enacted, amended or repealed until after a public hearing has been held upon the question of the enactment, amendment or repeal of such ordinance, before the city or town council, as the case may be, or a committee or commission authorized by such city or town council to investigate and make recommendations concerning such proposed ordinance, who shall give first notice of such public hearing specifying the time and place of such hearing by publication of such notice in a newspaper of general circulation within such city or town at least once each week for three (3) successive weeks prior to the date of such hearing, at which hearing opportunity shall be given all persons interested to be heard upon the matter of the proposed ordinance. Such newspaper notice containing a statement of the proposed amendments to the ordinance shall be inserted once in its entirety and thereafter a weekly formal legal notice shall be inserted stating that a public hearing will be held specifying the time and place of such hearing. Said subsequent formal notices shall include reference to said original advertisement which gave full description. *Whenever a general ordinance includes amendments which make changes in the zoning maps, except for previously approved zoning board approvals, the provisions of § 45–24–4.1 shall be mandatory.*" (Emphasis added.)

Section 45–24–4.1 requires that prior to the repeal, amendment, or enactment of any *specific* change in a zoning map, notice is to be provided "to all owners of any real property within two hundred (200) feet of the perimeter of the real property which is the subject matter of the proposed amendment, enactment or repeal, by registered or certified mail at least seven (7) days before the date of said hearing," and by newspaper notice as well.

The plaintiffs contend that § 45–24–4 on its face distinguishes between changes in maps and amendments of ordinances. Changes in maps, they argue, require the kind of individual notice described in § 45–24–4.1, amounting to notice by mail prior to the holding of any hearing. Conversely,

ordinance amendments, they contend, do not require individual notice, instead requiring only standard newspaper notice.

Understandably, the town of Glocester does not read § 45–24–4 in the same fashion as plaintiffs do. The town contends that only those general ordinance changes that include changes that are "specific" to one or more parcels require the town to give individual written notice. If the proposed change is "general" in scope, newspaper notice will suffice.

Applying our fundamental principles of statutory construction, we turn to the last, crucial sentence of § 45–24–4. The town argues that it would constitute an unreasonable result to interpret the sentence to require individual notice of every zoning-map change. The town claims that the Legislature's intent must have been that individual notice be provided only when "specific" changes are made. The town contends that a reading of § 45–24–4 requiring notice to individuals of all map changes would result in overly burdensome notice requirements that would prove very costly to Rhode Island's cities and towns.

While some increased costs might be associated with the expansion of city and town notice responsibilities, this in and of itself hardly constitutes a valid reason to ignore the plain language of the statute. Our case law makes clear that when statutory language is clear and unambiguous, there is nothing left for interpretation and the statute must be read literally. *Sugarman v. Lewis*, 488 A.2d 709 (R.I.1985). The last sentence of § 45–24–4 seems clear and unambiguous enough; notice is required "[w]henever a general ordinance includes amendments which make changes in the zoning maps." We see no reason to rewrite the statute so as to require that

notice be provided only when the map changes are "specific."

The trial justice properly concluded that this controversy presented a change in the zoning map in the town of Glocester within the meaning of § 45–24–4, as it existed in 1979. The Glocester Town Council sought revisions of the town's zoning ordinance, including changes in the zoning map. As such, individual written notice was required by registered or certified mail to all property owners within any area directly affected by those changes and all property owners within 200 feet of the perimeter of any real property which was the subject matter of a zoning-map change.[1] As reported earlier in this opinion, the parcels of property owned by plaintiffs Barbara Quigley and Alan and Nancy Whitford were adversely affected by the elimination of the A–2 designation and the substitution in its place of the designation A–5 and the subsequent change to A–4. The Hefner/Cobleigh parcel was also adversely affected when the area designation was changed from residential to A–4. As such, all were entitled to the kind of written notice described in § 45–24–4.1.

This court, in the *Golden Gate Corp. v. Town of Narragansett* dispute, noted that when a statute mandates a public hearing to which the public is invited to attend and at which it is to be afforded the opportunity to be heard, the right to be heard implicitly carries with it " 'a reasonable hope of being heeded.' " 116 R.I. at 562, 359 A.2d at 326. Again, it has been emphasized that a zoning ordinance is a restriction on a real estate owner's common-law right to the unfettered use of his or her land. *Goldstein v. Zoning Board of Review of Warwick*, 101 R.I. 728, 227 A.2d 195 (1967); *Center Realty Corp. v. Zoning Board of Review of Warwick*, 96 R.I. 76, 189 A.2d

---

**1.** The Rhode Island General Assembly, at its 1981 session, recognized the substantial costs involved in the notice requirement and amended it to provide for written notice to all owners of real property within the area of the proposed change and within 200 feet of the perimeter of the real property proposed for change by regular mail, rather than registered or certified mail. P.L.1981, ch. 417, § 1.

347 (1963). We believe that the Legislature, by requiring notice to owners of property situated in areas where the zoning classification has been changed, recognized these principles. Had the plaintiffs here received the notice referred to in § 45–24–4, individuals such as Quigley and Hefner and Cobleigh might have attended the public hearing where they would have had the opportunity to persuade the council to maintain the status quo. Perhaps their pleas would not have been "heeded," but at least they would have been "heard."

The defendants' appeal is denied and dismissed, and the judgment appealed from is affirmed.