Burk DEHMEL, Appellant,

v.

EMPLOYMENT APPEAL BOARD and Iowa Auto Assemblers, Appellees.

No. 87–1732.

Supreme Court of Iowa.

Dec. 21, 1988.

Dennis P. Marks, Council Bluffs, for appellant.

Blair H. Dewey and William C. Whitten, Des Moines, for appellee Employment Appeal Bd.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, NEUMAN and ANDREASEN, JJ.

ANDREASEN, Justice.

An employee who voluntarily leaves employment may be eligible for unemployment insurance benefits if the employee left with good cause attributable to the employer. In this appeal, we consider whether a twenty-five to thirty-five percent reduction in hours constitutes a substantial change which provides the employee with good cause to voluntarily leave. We also

address the issue of whether a partial lay-off or reduction in work hours due to economic circumstances beyond the employer's control can constitute good cause attributable to the employer.

The facts of this case are not in dispute. Burk Dehmel was employed by the Iowa Auto Assemblers (Iowa Auto) in June of 1985 as a full-time production employee. He began work at the Iowa Auto facility in Lamoni, Iowa, and was later transferred to an Iowa Auto facility at Mt. Ayr, Iowa. At Mt. Ayr, Dehmel became a line leader and his responsibilities, wages, and number of hours worked increased. In December 1986, the second shift at Mt. Ayr was discontinued. Dehmel was reduced from the position of line leader, transferred to the first shift, and became a regular production employee. With this move, his hours were reduced from forty hours per week with an additional five hours of overtime to between twenty-seven and thirty-two hours per week. This amounted to a monthly reduction of earnings of approximately $337. Based on these changes, Dehmel quit his job at Iowa Auto and accepted other employment.

Dehmel applied for unemployment insurance benefits. In reviewing his application, a Job Service of Iowa (Job Service) deputy concluded that Dehmel had voluntarily quit his employment on January 31, 1986, for good cause attributable to his employer and that Dehmel was eligible to receive benefits. Iowa Auto appealed this award of benefits. On March 26, 1987, a hearing officer from the Employment Appeal Board reversed the previous decision. On appeal to the Employment Appeal Board, the board, with one dissenting opinion, affirmed the findings and decision of the hearing officer. On appeal the district court affirmed the agency ruling which denied benefits to Dehmel.

The principles that govern our review are well established. Our review is not de novo, but is limited to correction of errors at law. *Roberts v. Iowa Dep't of Job Serv.*, 356 N.W.2d 218, 221 (Iowa 1984). We are thus bound by the hearing officer's findings of fact if those findings are supported by substantial evidence. Evidence is substantial when a reasonable mind could ac-

cept it as adequate to reach the same findings. *New Homestead v. Iowa Dep't of Job Serv.*, 322 N.W.2d 269, 270 (Iowa 1982). We are not, however, bound by the agency's legal conclusions, but may correct misapplications of the law. *Roberts*, 356 N.W. 2d at 221. If the facts and inferences fairly to be drawn therefrom are undisputed, the issue becomes one of law. *Green v. Iowa Dep't of Job Serv.*, 299 N.W.2d 651, 655 (Iowa 1980).

Dehmel has the burden of proving that he meets the basic eligibility conditions of Iowa Code section 96.4 (1987). The employer has the burden of proving that the claimant is disqualified for benefits under Iowa Code section 96.5. 345 Iowa Admin. Code 4.25 (1987); *see also Taylor v. Iowa Dept. of Job Serv.*, 362 N.W.2d 534, 541 (Iowa 1985).

Iowa Code section 96.5(1) (1987) provides:

An individual shall be disqualified for benefits:

1. *Voluntary quitting.* If the individual has left work voluntarily without good cause attributable to the individual's employer, if so found by the division of job service.

■ In making the determination of whether an employee "left work voluntarily without good cause attributable to the individual's employer," the agency is governed by the applicable provisions the Iowa Administrative Code. The Administrative Code outlines several reasons for voluntary quit which are presumed to be without good cause attributable to the employer:

*Voluntary quit without good cause.* In general, a voluntary quit means discontinuing the employment because the employee no longer desires to remain in the relationship of an employee with the employer from whom the employee has separated.... The following reasons for a voluntary quit shall be presumed to be without good cause attributable to the employer:

. . . .

(13) The claimant left because of dissatisfaction with the wages but knew the rate of pay when hired.

345 Iowa Admin.Code 4.25 (1987). The Administrative Code goes on to provide rea-

sons for voluntary quits which constitute good cause attributable to the employer.

*Voluntary quit with good cause attributable to the employer and separations not considered to be voluntary quits.* The following are reasons for a claimant leaving employment with good cause attributable to the employer:

(1) A change in the contract of hire. An employer's willful breach of contract of hire shall not be a disqualifiable issue. This would include any change that would jeopardize the worker's safety, health or morals. The change of contract of hire must be *substantial in nature and could involve changes in working hours, shifts, remuneration, location of employment, drastic modification in type of work,* etc. Minor changes in a worker's routine on the job would not constitute a change of contract of hire.

345 Iowa Admin.Code 4.26(1) (1987) (emphasis added). In *Wiese v. Iowa Dep't of Job Serv.,* 389 N.W.2d 676, 680 (Iowa 1986), we discussed the judicial application of the term "good cause":

The term "good cause" is not defined in Iowa Code chapter 96. It is a term capable of contraction and expansion by construction; reducing it to a fixed meaning or standard is nearly impossible. The meaning of the term "good cause" must be deduced from the facts of each case keeping the stated public policy and the fundamental purpose of the statute in mind. The term encompasses real circumstances, "adequate excuses that will bear the test of reason, just grounds for the action, and always the element of good faith."

*Id.* (citations omitted). It is not necessary to show that the employer acted negligently or in bad faith to show that an employee left with good cause attributable to the employer. *See Raffety v. Iowa Employment Sec. Comm'n,* 247 Iowa 896, 899–900, 76 N.W.2d 787, 789 (1956) (good cause attributable to employer can exist "even though the employer be free from all negligence or wrong doing in connection therewith."); *see also McComber v. Iowa Employment Sec. Comm'n,* 254 Iowa 957, 960–63, 119 N.W.2d 792, 795–96 (1963) (al-

lergies caused by unavoidable contact with wool on the job was voluntary quit attributable to the employer); *see generally,* Johnson & McSweeney, *Unemployment Compensation in Iowa: A Primer for Practitioners,* 32 Drake L.Rev. 575, 672–73 (1982–83). With this background, we now consider the circumstances in this case.

The hearing officer rejected Dehmel's claim that he should not be disqualified from benefits because the reduction in hours and wages constituted a substantial change in the contract of hire. The hearing officer found that Dehmel had been hired with the understanding that the employment would be for at least forty hours per week. Dehmel's weekly hours were found to have been reduced by twenty-five to thirty-five percent. According to the hearing officer, this was a "severe" reduction of hours which constituted a hardship for Dehmel. Dehmel's earnings were reduced by $337 per month. This reduction, according to the hearing officer, did not constitute a change in the contract of hire because the reduction was based on economic circumstances beyond the control of the employer. The hearing officer reasoned:

If the claimant's reduction in hours were due to some determination on the part of the employer to selectively and permanently reduce hours to the claimant, this would be a change in the contract of hire. The claimant was hired on the understanding that he would be full time. The employer was providing full-time employment and desired the claimant to work full time. The only reason for the reduction in the claimant's hours was for circumstances beyond the control of the employer.

No industry is immune from the risk of layoffs. A layoff by an employer, because of reduced demand for its product, is not a change in the contract of hire within the contemplation of the regulation or the law. The claimant's partial layoff due to economic conditions is not a change in the contract of hire.

We must determine if the reduction of hours and wages constituted a substantial change in the contract of hire which would justify Dehmel's voluntary quit. The sec-

ond issue we address is whether a partial layoff due to economic conditions which were beyond the control of the employer can constitute a change in the contract of hire.

■ As a general rule, a substantial pay reduction gives an employee good cause for quitting. *See* 345 Iowa Admin.Code 4.26(1); *see also Bunny's Waffle Shop, Inc. v. California Employment Comm'n*, 24 Cal.2d 735, 743, 151 P.2d 224, 228 (1944); *Keystone Consol. Indus. v. Illinois Dep't of Labor*, 37 Ill.App.3d 704, 706–07, 346 N.E.2d 399, 401 (1976); *Armco Steel Corp. v. Labor & Indus. Relations Comm'n*, 553 S.W.2d 506, 508 (Mo.App.1977).

In determining whether Dehmel's reduction in hours and pay was substantial, we consider the circumstances of this individual case. *See Wiese v. Iowa Dep't of Job Serv.*, 389 N.W.2d 676, 680 (Iowa 1986) (common sense and prudence must be exercised in evaluating all circumstances that lead to an employee's quit); *see also Ship Inn, Inc. v. Commonwealth*, 50 Pa. Cmwlth. 292, 412 A.2d 913, 915 (1980). There is no "talismanic percentage figure that separates a substantial reduction from one that is not." *Ship Inn*, 412 A.2d at 915. The hearing officer did not make a clear finding as to whether or not reduction of Dehmel's hours and wages was substantial.

■ Based on the hearing officer's findings of fact, we find that the reduction was substantial as a matter of law. The hearing officer described this cut back as a "severe reduction in hours," and stated, "it is understandable that the reduction in the claimant's hours by 25 to 35 percent each week would cause hardship." Finding that a reduction in hours of twenty-five to thirty-five percent is substantial is also consistent with decisions from other jurisdictions. *See, e.g., Tombigbee Lightweight Aggregate Corp. v. Roberts*, 351 So.2d 1388, 1389 (Ala.Civ.App.1977) (loss of guaranteed ten hours overtime per week was substantial); *Bunny's Waffle Shop, Inc. v. California Employment Comm'n*, 24 Cal.2d 735, 743, 151 P.2d 224, 228 (1944) (25% wage cut was good cause for quit); *Sunstar Foods, Inc. v. Uhlendorf*, 310 N.W.2d 80, 84 (Minn. 1981) (21–26% reduction in wages justified voluntary quit); *Danielson Mobil, Inc. v. Johnson*, 394 N.W.2d 251, 253 (Minn.App. 1986) (19% reduction in wages due to elimination of overtime was good cause); *Morysville Body Works Inc. v. Commonwealth*, 430 A.2d 376, 377 (Pa.1981) (25% reduction in salary was good cause); *see generally* Annotation, *Unemployment Compensation: Eligibility as Affected by Claimant's Refusal to Work at Reduced Compensation*, 95 A.L.R.3d 449 (1979).

The hearing officer held that there was not a change in the contract of hire because the reductions were due to economic conditions which were beyond the control of the employer. This reasoning is contrary to the intention of the Employment Security Law.

We have previously stated that the Employment Security Law should be interpreted liberally to achieve the legislative goal of minimizing the burden of involuntary unemployment. *See Roberts v. Iowa Dep't of Job Serv.*, 356 N.W.2d 218, 221 (Iowa 1984); *Cosper v. Iowa Dep't of Job Serv.*, 321 N.W.2d 6, 10 (Iowa 1982); *Brumley v. Iowa Dep't of Job Serv.*, 292 N.W.2d 126, 129 (Iowa 1980). Awarding benefits when there is a substantial pay reduction is consistent with the remedial nature of this legislation, even when the reduction was due to poor economic conditions.

Our holding has support from similar decisions in other jurisdictions. The Alabama Court of Civil Appeals held that an employee quit with good cause when the employee's wages were reduced by the ten hours of overtime previously agreed to. *See Tombigbee Lightweight Aggregate Corp. v. Roberts*, 351 So.2d 1388, 1390 (Ala. Civ.App.1977). In *Tombigbee*, the employer challenged this award of benefits because the reduction of hours was based on a general economic depression. The Alabama court rejected that argument by stating:

The motivation of the employer in eliminating overtime is immaterial, in this instance, when the basis of employment centered around the guarantee of overtime.

*Id.* This view is shared by other courts which have allowed benefits when reduc-

**704**

tions were imposed because of general economic circumstances. *See, e.g., Keystone Consol. Indus. v. Illinois Dep't of Labor,* 37 Ill.App.3d 704, 706–07, 346 N.E.2d 399, 401 (1976); *R & R Eng'g Co. v. Oklahoma Employment Sec. Comm'n,* 737 P.2d 118, 118–19 (Okla.1987).

We hold that the hearing officer's findings of fact are supported by substantial evidence. Based on those facts, Dehmel voluntarily quit with good cause attributable to Iowa Auto. As a matter of law, the hourly reductions constituted a substantial change in the contract of hire. The Employment Appeal Board erred in its conclusion of law. Dehmel is eligible to receive unemployment insurance benefits. The decision of the district court is reversed. This matter is remanded to the agency for proceedings consistent with this opinion.

REVERSED AND REMANDED.