**TRAVELERS PROPERTY AND CASUALTY CORPORATION**

v.

**OLD REPUBLIC INSURANCE COMPANY.**

**No. 2002–442–Appeal.**

Supreme Court of Rhode Island.

May 10, 2004.

Michael DeLuca, Providence, for Plaintiff.

Holly Rao, Warwick, for Defendant.

Present: WILLIAMS, C.J.,
FLANDERS, GOLDBERG, FLAHERTY,
and SUTTELL, JJ.

## OPINION

SUTTELL, Justice.

A dispute between two insurance companies over liability for prejudgment interest is the focus of this appeal. We are invited to enter the often-labyrinthine world of insurance law to determine whether the carriers provided "primary" or "excess" coverage. We resist the temptation, however, and resolve the case on more familiar grounds. Because a final judgment is a prerequisite to imposing prejudgment interest, such interest, absent an agreement of the parties, does not accrue when a case is settled before a judgment becomes final, even when the settlement occurs while such claim is on appeal following a jury verdict and Superior Court judgment for damages, prejudgment interest, and costs.

The plaintiff, Travelers Property and Casualty Corporation (Travelers or plaintiff), appeals from a Superior Court grant of summary judgment in favor of defendant, Old Republic Insurance Company (Old Republic or defendant), in a declaratory judgment action. After hearing the arguments and examining the briefs of the parties, we affirm the judgment in favor of Old Republic.

The underlying claim arises from an automobile accident that occurred on February 17, 1997, in Pawtucket, Rhode Island. Elisabete Fernandes (Ms. Fernandes) was riding in the front seat of a car driven by Maria Gomes and owned by José Gomes. Maria Gomes alleged that a truck pulled out in front of the vehicle she was driving, causing her vehicle to strike a telephone pole as she attempted to avoid the truck. As a result, Ms. Fernandes suffered serious injuries.

Anthony Reed (Mr. Reed) was operating the truck that allegedly caused the accident. He was employed by Action Container Corporation (Action Container). At the time of the accident, Action Container leased its trucks from Ryder Truck Rentals, Inc. (Ryder). Ryder was insured by a general accident insurance policy issued by Old Republic, which provided coverage [1] pursuant to the lease agreement between Ryder and Action Container. The policy provided coverage of $500,000. Action Container held two policies through Travelers, one providing $1 million of liability coverage, and the other, an umbrella policy, providing $2 million of catastrophe coverage. [2]

Eventually, Ms. Fernandes filed suit (*Fernandes* case) in Superior Court naming Maria and José Gomes, Action Container, Mr. Reed, and Ryder as defendants, and alleging three counts of negligence against each defendant. Ms. Fernandes demanded compensation for injuries and economic losses totaling $2.75 million. Before trial, she made a written offer to settle her claims with all the named defendants. The settle-

---

1. The plaintiff characterizes this policy as "primary" insurance, and hinges much of its appeal on Old Republic's responsibilities for prejudgment interest in its capacity as "primary insurer." Old Republic does not deny that it was the "primary" insurer for Ryder. However, Old Republic asserts that Travelers was the primary insurer for both Action Container and Mr. Reed.

2. In its brief, Travelers refers only to a single policy of general accident insurance issued to Action Container. Old Republic also refers to a single Travelers policy having a $3 million limit of liability.

ment offer broke down liability according to the limits of each insurance policy. Accordingly, she demanded $100,000 from Maria and José Gomes, $500,000 from Ryder, and $2.15 million from Action Container and Mr. Reed. The offer to settle was rejected, however, and the case proceeded to a jury trial.

As a result, Ms. Fernandes secured a jury verdict totaling $1,822,000 against all defendants. On May 5, 1999, a civil judgment on this verdict was entered in that amount, plus prejudgment interest of $483,405.05 and costs, for a total award of $2,305,404.05, from which Travelers appealed. While the appeal was pending, however, the parties settled, and Ms. Fernandes agreed to release all claims against all parties in consideration of $2 million.

In accordance with the settlement, Travelers paid Ms. Fernandes the full $2 million. Old Republic then reimbursed Travelers $500,000, the policy limit on its policy with Ryder. On December 23, 1999, a satisfaction-of-judgment stipulation was entered in Superior Court.

For some time before the settlement and execution of the release by Ms. Fernandes on October 21, 1999, Travelers had corresponded with Old Republic and its insured, Ryder, concerning responsibility for paying prejudgment interest and costs. On September 14, 1999, Travelers advised Ryder and Old Republic that "the terms of the policy issued to Ryder by Old Republic

provide for payment of the pre-judgment interest in the amount of $483,505.00 and costs of $3,105.75." Ryder responded on September 17, 1999, with a facsimile transmission, agreeing to pay the costs, but stating, "It is our position that the interest on the judgment should be paid on a pro rata basis." Ryder then sent a letter dated October 6, 1999, in which it disclaimed any liability for prejudgment interest because final judgment had not been entered in the *Fernandes* case.

The action for declaratory judgment ensued, in which Travelers asked that Old Republic be held liable for the entire sum of interest[3] on judgment. Travelers advanced three grounds to support its complaint. First, Old Republic improperly refused to pay the interest in derogation of the provisions of its policy with Ryder. Second, Old Republic is responsible for the interest because it was the primary insurer of Action Container. Third, Old Republic should pay the interest pursuant to G.L.1956 § 27–7–2.2[4] because judgment was entered before Old Republic made a settlement offer.

After a bout of disputatious discovery, the parties filed cross-motions for summary judgment, with legal memoranda, objections thereto, and replies. Old Republic argued, *inter alia*, that because the underlying claims had been settled before disposition of the appeal, there was no "final

---

**3.** At paragraph 19 of the declaratory judgment complaint, Travelers says that the amount in dispute is $178,000, which represents the difference between the settlement and the jury verdict, excluding interest.

**4.** General Laws 1956 § 27–7–2.2 provides:

"**Interest on judgment—Payment by insurer.**—In any civil action in which the defendant is covered by liability insurance and in which the plaintiff makes a written offer to the defendant's insurer to settle the action in an amount equal to or less than

the coverage limits on the liability policy in force at the time the action accrues, and the offer is rejected by the defendant's insurer, then the defendant's insurer shall be liable for all interest due on the judgment entered by the court even if the payment of the judgment and interest totals a sum in excess of the policy coverage limitation. This written offer shall be presumed to have been rejected if the insurer does not respond in writing within a period of thirty (30) days."

judgment" capable of triggering the imposition of prejudgment interest. After considering the parties' respective positions on a number of issues, the hearing justice granted Old Republic's motion for summary judgment on the ground that the resolution of the prior lawsuit by settlement operated as a waiver of "all interest questions." In response to Travelers' arguments, the hearing justice concluded:

"My view of the case is that 27–7–2.2 is not involved in this issue because this was a settled case. * * * Sure, there was a verdict, but that verdict was immediately wiped out once Travelers went upstairs on appeal. * * * Neither side is entitled to a judgment for interest. Summary judgment for the Plaintiff is denied. Summary judgment on the cross motion is granted."

The parties then filed respective motions for entry of final judgment. The summary judgment for Old Republic was entered on June 4, 2002, and Travelers timely filed a notice of appeal.

### Discussion

On appeal Travelers argues that the Superior Court's grant of summary judgment was in error because it failed to find that the Travelers policy was an excess policy and that the primary coverage on the lease between Ryder and Action Container was provided by the Old Republic policy. Moreover, as an excess insurer, Travelers asserts that it did not have a duty to respond to a settlement demand under § 27–7–2.2 until the Old Republic policy was exhausted. Finally, Travelers argues that the hearing justice erred in determining that a final judgment had not been entered, and that the "post-judgment settlement" precluded the application of G.L. 1956 § 9–21–10 and § 27–7–2.2. Not only did the hearing justice misinterpret applicable law, Travelers contends, but also he overlooked Old Republic's response to a

request for admission that "prejudgment interest amounts to $178,000."

In response, Old Republic first argues that it could not have settled Ms. Fernandes' demand on November 25, 1998, to release the claim against Ryder for the full policy limit of $500,000 without violating its duty of good faith and fair dealing owed to its other two insureds, Action Container and Anthony Reed. Next, Old Republic argues that the Travelers policy covering Action Container and Mr. Reed was a "primary" policy and not an "excess" or "umbrella" policy. Therefore, Travelers had the duty to settle on their behalf within the total policy limit of $3 million. Further, Old Republic argues that no final judgment was entered in the *Fernandes* case that would invoke the prejudgment interest provisions of §§ 9–21–10 and 27–7–2.2. Finally, Old Republic argues that calling the difference between a settlement amount and a jury verdict "pre-judgment interest" in response to a request for admissions does not dispose of the issues in this case.

■ As we conclude that the judgment in question had not become final when Ms. Fernandes settled her claims, we need not examine the respective policies to determine whether they provided primary or excess coverage. Nor do we address the liability, if any, of each carrier for failing to settle within policy limits under the provisions of § 27–7–2.2. We resolve the issues, rather, in accordance with the well-settled principle "that the term 'judgment' referred to in § 9–21–10 contemplates a final judgment, one that finally adjudicates the rights of the parties, whether it is a judgment from which no appeal is taken or a judgment that is affirmed by this court after consideration and rejection of the appellant's contentions." *Welsh Manufacturing, Division of Textron, Inc. v. Pink-*

*erton's Inc.,* 494 A.2d 897, 898 (R.I.1985) (*Welsh Manufacturing* hereafter).

■ In reviewing the parties' cross-motions for summary judgment, we examine the matter *de novo. Delta Airlines, Inc. v. Neary,* 785 A.2d 1123, 1126 (R.I. 2001). "Summary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* (citing *Woodland Manor III Associates v. Keeney,* 713 A.2d 806, 810 (R.I.1998)). An examination of our cases reveals that as a matter of law "final judgment" had not been entered in the underlying *Fernandes* case. Hence, any question concerning which insurance carrier is responsible for the difference between the jury verdict and the settlement—the $178,000 that the parties dispute is "prejudgment interest"—implicates neither § 9–21–10 nor § 27–7–2.2 because the case settled, thereby superseding the underlying judgment.

■ We first note that Travelers' reliance on § 9–21–10 is misplaced. Section 9–21–10 provides for the addition of interest to the amount of damages awarded by a verdict or a decision in a civil action:

> "**Interest in civil actions.**—(a) In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein. \* \* \* This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided."

Travelers appeals to this section to support its conclusion that the lower court's ruling is illogical because the "statute was invoked and applied when prejudgment interest was added to the jury verdict." Clearly, the clerk added interest to the jury award after the verdict was rendered according to the terms of § 9–21–10. Travelers misperceives, however, the effect that the appeal and ultimate settlement had on the verdict and interest award. A judgment may be entered on a verdict, and the clerk of the court must add prejudgment interest to the verdict in accord with § 9–21–10, but that judgment is not "final" at the time of its entry.

This Court has said repeatedly that the term "judgment" referred to in § 9–21–10 means a final judgment. *Bradford Dyeing Association, Inc. v. J. Stog Tec GMBH,* 809 A.2d 468, 471 (R.I.2002) (per curiam); *Catanzaro v. Central Congregational Church,* 723 A.2d 774, 775 (R.I.1999) (per curiam); *Cardi Corp. v. State,* 561 A.2d 384, 386 (R.I.1989); *Welsh Manufacturing,* 494 A.2d at 898. Our pronouncement in *Welsh Manufacturing,* 494 A.2d at 898, that a final judgment is one that finally adjudicates the rights of the parties sets the boundary that must be crossed before interest becomes due on the judgment. Here, the settlement with Ms. Fernandes was reached before the rights of the parties had been finally adjudicated. Rather, the judgment entered in the Superior Court was on appeal, awaiting either affirmation or reversal by this Court.

Travelers attempts to draw a distinction between this case and *Welsh Manufacturing,* arguing that the latter case has no application to the issues now before us. In the *Fernandes* case, Travelers asserts, a judgment indeed had been entered on May 5, 1999, and the Superior Court clerk had, in fact, added prejudgment interest to the jury verdict pursuant to § 9–21–10. It

contends that, although a notice of appeal was filed, the settlement made the appeal moot, and points to the satisfaction-of-judgment stipulation as indicating the parties' understanding that a judgment existed to be satisfied. Travelers further argues that *Welsh Manufacturing* merely "provides guidance for determining the time period when the accrual of prejudgment interest ends in order to determine when postjudgment interest begins to accrue."

We do not parse the language of *Welsh Manufacturing* so finely. It clearly stands for the proposition that a judgment does not become final until this Court decides the appeal, unless no appeal is taken. Here, the appeal had not been decided when the underlying claims were settled.

Travelers also argues that *Welsh Manufacturing* has no bearing on the applicability of § 27–7–2.2 that holds a nonsettling insurer liable for interest on a judgment, even if the total payment exceeds policy limits, when the insurer rejects an offer to settle within policy limits. Again, however, Travelers overlooks our definition of "judgment" as set forth in *Welsh Manufacturing,* 494 A.2d at 898. Interest does not become due on the judgment until the judgment becomes final. In the case before us, the settlement interrupted, and ultimately terminated, the May 5, 1999 judgment's journey to finality. The fact that the parties may have denominated a stipulation as "Satisfaction of Judgment" does not alter the operation of the law.

Moreover, Travelers' effort to distinguish a "prejudgment settlement to avoid the uncertainties of a jury verdict at trial" from a "post-judgment action taken to reduce the amount of liability that had already been assessed by virtue of the entry of *judgment,*" is unavailing.

We observe that settlements can be reached for many reasons. In this case, Travelers contends that it entered into a settlement with Ms. Fernandes to reduce its liability after entry of judgment, rather than to avoid the uncertainties of a trial. We do not doubt Travelers' motivation in settling the *Fernandes* case. However, uncertainties exist at the appellate level as well as the trial level. The "Release of All Claims" executed by the parties in the *Fernandes* case emphatically illustrates the recognition of these uncertainties:

"It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim and that the payment made is not to be construed as an admission of liability on the parties hereby released, and that said parties released deny liability therefor and intend merely to avoid litigation and buy their peace."

Travelers bought its peace on this "doubtful and disputed claim" to avoid the risks that are inherent in the appeals process.

Finally, Travelers argues that the hearing justice overlooked material facts and failed to consider properly Old Republic's supplemental response to Travelers' request for admissions that "prejudgment interest amounts to $178,000." We are reminded of Shakespeare's famous query: "What's in a name? [T]hat which we call a rose [by] any other name would smell as sweet." [5] Conversely, skunk cabbage will emit a pungent odor, even if it were called a rose. So too, the mere fact that Old Republic may have mischaracterized a portion of the $2 million settlement as "prejudgment interest" in discovery, does not render finality to the judgment entered in the Superior Court on May 5, 1999, in contravention of well-settled principles concerning the finality of judgments. It

**5.** William Shakespeare, Romeo and Juliet act 2, sc. 2.

was, perhaps, a legal conclusion, but certainly not binding on the Superior Court or on this Court.

We agree with Travelers that the hearing justice misstated the effect of the appeal upon the judgment when he said that the "verdict was immediately wiped out once Travelers went upstairs on appeal." If not wiped out, however, it was certainly held in abeyance by the appeal until final disposition. In the *Fernandes* case, the settlement occurred before the appeal had been decided and while the outcome was still uncertain. Thus, the lower-court judgment had not yet ripened into finality. The settlement was for the sum of $2 million, thereby reducing the defendants' overall liability by $305,404.05. Neither the settlement documents nor the satisfaction-of-judgment stipulation specified how the payment was to be allocated among the defendants. Clearly, Travelers had notified both Old Republic and Ryder before the settlement was reached that it considered Old Republic responsible for paying the $178,000. Moreover, Ryder initially had offered to pay "the interest on the judgment" on a pro-rata basis. This offer later was withdrawn. Nevertheless, the fact that a portion of the settlement figure may have been intended to represent prejudgment interest does not change the results absent an agreement between the parties specifically to allocate responsibility for the overall settlement amount.

Had Travelers expected Old Republic to contribute more than its $500,000 policy limit, the more prudent course would have been to secure Old Republic's assent before settlement. In this case, when the settlement was reached on October 21, 1999, Travelers was fully aware that Old Republic was disclaiming any liability for the so-called prejudgment interest.

### Conclusion

For the foregoing reasons, we affirm the Superior Court judgment. We remand the record in this case to the Superior Court.