Tracie Peloquin, as Administratrix of the       :
    Estate of Pearl E. Archambault

             v.                              :

Haven Health Center of Greenville, LLC et al.  :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Tracie Peloquin, as Administratrix of the    :
    Estate of Pearl E. Archambault

                v.                 :

 Haven Health Center of Greenville, LLC et al.   :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** In June 2006, Pearl E. Archambault tragically died while in the care of Haven Health Center of Greenville, LLC (Haven Health) after a nurse mistakenly administered a lethal overdose of morphine. The administratrix of her estate, Tracie Peloquin (plaintiff), filed a medical malpractice action and now appeals from the Superior Court's denial of her partial summary-judgment motion and grant of summary judgment in favor of the defendant Columbia Casualty Company (Columbia),[1] the professional liability insurer of the now-defunct nursing facility.[2] The plaintiff avers that the Superior Court erred in interpreting Rhode Island law, argues that this Court should construe the insurance contract between Columbia and its insured in her favor, and urges this Court to reverse the Superior

---

[1] Typically, the denial of a plaintiff's summary-judgment motion is reviewable only through a petition for certiorari, and is not appealable as a matter of right. "However, this Court 'regularly consider[s] appeals from the denial of a motion for summary judgment when coupled with an appeal or cross-appeal of the granting of a motion for summary judgment.'" Avilla v. Newport Grand Jai Alai LLC, 935 A.2d 91, 94 n.4 (R.I. 2007) (quoting O'Gara v. Ferrante, 690 A.2d 1354, 1356 (R.I. 1997)). "In those situations, 'the appeal is no longer interlocutory because the grant of summary judgment constituted a final and appealable judgment.'" Id. (quoting O'Gara, 690 A.2d at 1356). Thus, we will consider both plaintiff's appeal of the grant of summary judgment for Columbia as well as the denial of plaintiff's motion.

[2] Because there have been multiple defendants involved in this case, we will refer to Columbia by name in this opinion to maintain clarity. Of the various defendants, only Columbia is party to this appeal.

Court's decision and order that summary judgment be entered in her favor. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court and remand with instructions that the Superior Court enter judgment in favor of the plaintiff for $100,000, plus prejudgment and postjudgment interest that has accrued on that amount.

## I

## Facts and Procedural History[3]

In June 2006, Archambault was a resident at Haven Health. On June 24 of that year, Denise Hardesty,[4] a registered nurse employed by Haven Health, misinterpreted a physician's order prescribing five milligrams of a morphine solution, and instead administered five milliliters of that substance to Archambault. As a result of this drug overdose, Archambault died on June 25.

In December 2006, plaintiff filed the present action against Haven Health and Hardesty on behalf of Archambault's estate. During discovery, Hardesty gave deposition testimony acknowledging that she was negligent when she mistakenly administered the incorrect dosage of morphine solution to Archambault. She also testified at her deposition that she was a registered nurse in Rhode Island and a full-time employee of Haven Health at the time of Archambault's death.

---

[3] It is well established that when evaluating a motion for summary judgment, a court must "view[] the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party * * *." See Derderian v. Essex Insurance Co., 44 A.3d 122, 126-27 (R.I. 2012) (quoting Travelers Property and Casualty Corp v. Old Republic Insurance Co., 847 A.2d 303, 307 (R.I. 2004)). Columbia notes in its filings with this Court that it "generally does not disagree with [plaintiff's] statement of the factual and procedural posture of this action," although it would characterize the insurance contract's language differently. Therefore, the opinion's summary of the underlying facts is drawn largely from plaintiff's filings.

[4] We note that plaintiff refers to "Deborah Hardesty" throughout her filings, but that other documents indicate that Hardesty's correct first name is Denise.

When plaintiff filed her complaint, the Greenville Haven Health facility was insured under a claims-made professional liability insurance policy issued by Columbia (Columbia policy). The Columbia policy insured both Haven Health as an entity, as well as "any individual who is or becomes [a Haven Health] 'employee' * * * during the 'policy period' but only for 'professional services' performed on [Haven Health's] behalf."[5]  This policy limited coverage for professional liability to $1 million per claim and $3 million in the aggregate.  However, the policy also contained a self-insured retention endorsement (SIR Endorsement) requiring Haven Health to pay the first $2 million of "all 'damages' and all 'claim expenses' resulting from * * * each 'claim' under the Professional Liability Coverage Form."  The policy described the parties' obligations under the SIR Endorsement as follows:

> "[Columbia's] obligation to pay 'damages' and 'claim expenses' as a result of a 'claim' is in excess of the Self-Insured Retention. [Haven Health] [is] required to pay all 'damages' and 'claim expenses' up to the amount of the Self-Insured Retention listed herein.  The Limits of Liability set forth on the Declarations Page are in excess of the Self-Insured Retention regardless of [Haven Health's] financial ability or inability to pay the Self-Insured Retention and in no event are we required to make any payments within [Haven Health's] Self-Insured Retention."

Thus, under the terms of the policy, Columbia's obligation to pay on a professional liability claim would arise only to the extent that the damages and expenses exceeded $2 million, and Haven Health would be directly responsible for paying any amounts less than that.

---

[5] The policy defined "employee" as "a person, whose work is engaged and directed by [Haven Health]," but excluding independent contractors.  The term "professional services" was defined to include "healthcare services," which, in turn, meant "services performed by an Insured to care for or assist [Haven Health] patients provided such Insured is licensed; trained or qualified to perform such services in the jurisdiction in which such services are rendered."

In late 2007 or early 2008, Haven Health and two related entities—Haven Eldercare of New England, LLC (HENE) and Haven Eldercare, LLC (HE)[6]—filed for Chapter 11 bankruptcy.[7] The next summer, the bankruptcy court approved the sale of substantially all of the assets of Haven Health, HENE, and HE, and dismissed their cases (without a discharge). In 2008, Hardesty filed for Chapter 7 bankruptcy, and she obtained a discharge later that year.

In 2009, plaintiff amended her complaint to add Columbia as a defendant and to assert two counts against Columbia directly, based on G.L. 1956 § 27-7-2.4, which permits an injured party to proceed against an insurer when the insured has filed for bankruptcy. The plaintiff also added HENE and HE as defendants.[8] Haven Health, HENE, and HE failed to respond to plaintiff's amended complaint, and the Superior Court entered default judgment against each of those defendants on November 20, 2009. The plaintiff was awarded a total of $364,421.63,[9] against Haven Health, HENE, and HE. Columbia answered plaintiff's complaint and was not defaulted.

The plaintiff moved for partial summary judgment against Columbia on May 10, 2010,[10] urging the Superior Court to declare the SIR Endorsement "void and unenforceable as against

---

[6] According to plaintiff's complaint, Haven Health is wholly owned by HENE, and HE holds HENE stock.

[7] A large number of Haven Health entities filed for bankruptcy protection between November 2007 and January 2008. However, it is unclear from the documents provided by the parties exactly when during that period the entities involved in the present action filed their bankruptcy petitions.

[8] At times, plaintiff's complaint also has named as individual defendants HENE and HE shareholders, as well as the company that brokered the Columbia policy, but the status of these parties is not relevant to this appeal.

[9] This sum includes $256,881 in damages (the statutory minimum amount under Rhode Island's wrongful death statute, G.L. 1956 § 10-7-2, medical expenses, and funeral expenses), costs, and 12 percent per annum interest accruing from June 24, 2006, to the date of default judgment.

[10] The plaintiff amended her motion on July 22, 2010. We will deal exclusively with this amended motion because it is plaintiff's operative pleading in this case.

public policy" and to enter judgment against Columbia for $238,007.96.[11] Columbia objected to plaintiff's motion for summary judgment, and it filed its own cross-motion for summary judgment. The Superior Court granted summary judgment in favor of Columbia, denied plaintiff's summary judgment motion, and entered final judgment against plaintiff. The plaintiff filed a timely notice of appeal.

## II

### Standard of Review

"In reviewing the parties' cross-motions for summary judgment, we examine the matter de novo." Derderian v. Essex Insurance Co., 44 A.3d 122, 126 (R.I. 2012) (quoting Travelers Property and Casualty Corp. v. Old Republic Insurance Co., 847 A.2d 303, 307 (R.I. 2004)). "In reviewing the Superior Court's judgment on the parties' motions for summary judgment, we * * * apply the same standards as those used by the trial court." Delta Airlines, Inc. v. Neary, 785 A.2d 1123, 1126 (R.I. 2001). Thus, "[s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the [C]ourt determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Derderian, 44 A.3d at 126-27 (quoting Travelers Property and Casualty Corp., 847 A.2d at 307).

"[Q]uestions of statutory construction are reviewed de novo by this Court." Mendes v. Factor, 41 A.3d 994, 1002 (R.I. 2012) (quoting Generation Realty, LLC v. Catanzaro, 21 A.3d 253, 258 (R.I. 2011)). "When the language of the statute is clear and unambiguous, it is our responsibility to give the words of the enactment their plain and ordinary meaning." Id. (quoting

---

[11] This figure included $100,000 in damages (the amount of coverage that plaintiff argued Columbia was statutorily obligated to provide), prejudgment interest amounting to $105,060.21, and postjudgment interest amounting to $32,947.75.

Generation Realty, LLC, 21 A.3d at 258). "Moreover, when we examine an unambiguous statute, there is no room for statutory construction and we must apply the statute as written." Tanner v. Town Council of East Greenwich, 880 A.2d 784, 796 (R.I. 2005) (quoting State v. DiCicco, 707 A.2d 251, 253 (R.I. 1998)).

"The plain meaning approach, however, is not the equivalent of myopic literalism, and it is entirely proper for us to look to the sense and meaning fairly deducible from the context." Mendes, 41 A.3d at 1002 (quoting Generation Realty, LLC, 21 A.3d at 259). "Therefore we must consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." Id. (quoting Generation Realty, LLC, 21 A.3d at 259). "It is generally presumed that the General Assembly 'intended every word of a statute to have a useful purpose and to have some force and effect,'" Curtis v. State, 996 A.2d 601, 604 (R.I. 2010) (quoting LaPlante v. Honda North America, Inc., 697 A.2d 625, 629 (R.I. 1997)), and this Court's "ultimate goal is to give effect to the purpose of the act as intended by the Legislature." Hanley v. State, 837 A.2d 707, 711 (R.I. 2003) (quoting Oliveira v. Lombardi, 794 A.2d 453, 457 (R.I. 2002)). "Finally, under no circumstances will this Court construe a statute to reach an absurd result." Mendes, 41 A.3d at 1002 (quoting Generation Realty, LLC, 21 A.3d at 259).

## III

### Discussion

The plaintiff raises numerous issues on appeal. She maintains that the SIR Endorsement in Columbia's policy is invalid under Rhode Island law, and she further urges that it is void as against public policy. Additionally, plaintiff asserts that the trial justice erred in concluding that G.L. 1956 § 42-14.1-2(a) and regulations promulgated based on it do not require nursing

facilities to maintain professional liability insurance at a minimum level of $100,000 per claim, $300,000 in the aggregate. Next, plaintiff argues that this Court should conclude as a matter of law that, based on the policy's language, Haven Health and Hardesty should be treated as separate insureds and that statutory minimum coverage requirements should be applied to each, separately. Finally, plaintiff urges that we read the Columbia policy's language to require Columbia to pay prejudgment and postjudgment interest on the full amount of the judgment entered against the insureds, rather than on only that portion of the judgment that is within the per-claim limit. The plaintiff asserts that it would best serve the interests of judicial economy for this Court to enter summary judgment in her favor, rather than remanding the case to Superior Court for further proceedings.[12]

## A

## Validity of the SIR Endorsement

The parties disagree about whether the SIR Endorsement in the Columbia Policy, which required Haven Health to cover the first $2 million of any damages awarded and expenses incurred in connection with a claim, is valid under Rhode Island law. Under § 42-14.1-2(a), "[t]he director of the department of business regulation is * * * authorized to establish rules and regulations allowing persons or entities with sufficient financial resources to be self-insurers." To date, the Department of Business Regulation (DBR) has not promulgated any such

---

[12] The plaintiff also argues on appeal that the hearing justice erred in concluding that she lacked standing to proceed directly against Columbia under G.L. 1956 § 27-7-2 (permitting direct action against an insurer by an injured party who has obtained a judgment against the insured). However, it is undisputed that plaintiff has standing under § 27-7-2.4 (permitting an injured party to proceed directly against an insurer when the insured has filed for bankruptcy protection). Because our holding does not depend on which of these statutes confers standing, and the parties agree that plaintiff has standing under the latter, it is unnecessary for us to address this argument.

regulations, and the parties disagree on whether healthcare providers may lawfully self-insure in the absence of DBR action.

The plaintiff contends that self-insurance does not constitute insurance coverage and, thus the SIR Endorsement in Haven Health's policy did not satisfy the minimum coverage levels purportedly required by § 42-14.1-2(a). In particular, plaintiff notes that, under the Columbia policy's SIR Endorsement, Haven Health was required to make all payments up to $2 million, rendering Columbia's coverage meaningless for any claims below that amount. The plaintiff argues that unlike policies with deductibles, in which the insurer (rather than the claimant) must seek to recover the deductible amount from the insured, SIR endorsements frustrate the public-protection purpose of the statute. In short, plaintiff argues that "self-insurance is no insurance at all," Guerico v. Hertz Corp., 358 N.E.2d 261, 264 (N.Y. 1976), and cannot possibly satisfy the minimum coverage thresholds that she argues are required under Rhode Island law. Thus, plaintiff urges that this Court should declare the SIR Endorsement "void as against public policy to the extent of the statutorily mandated minimum insurance limits." The plaintiff acknowledges that not all self-insured retentions violate public policy and recognizes that Rhode Island law permits self-insurance in several other contexts. See, e.g., G.L. 1956 § 28-36-1 (requiring employers to maintain workers' compensation insurance but permitting self-insurance); G.L. 1956 § 31-33-9 (permitting self-insurance for certain motor vehicles provided that the State Division of Motor Vehicles "is satisfied that the person is possessed and will continue to be possessed of the ability to pay judgment obtained against the person"). The plaintiff argues, however, that self-insurance is not permitted in the medical-liability-coverage context because neither the General Assembly nor the DBR have expressly permitted it, and she emphasizes that § 42-14.1-2(a) merely "authorizes the DBR 'to establish rules and regulations allowing persons

or <u>entities with sufficient financial resources</u> to be self-insurers.'" (Quoting § 42-14.1-2(a) (emphasis added by the party)). The plaintiff suggests that since both Haven Health and Hardesty filed for bankruptcy shortly after plaintiff filed her action, neither would have been deemed by the DBR to be sufficiently financially stable to qualify for self-insurance.

To support her argument, plaintiff cites <u>Ryan v. Knoller</u>, 695 A.2d 990, 992 (R.I. 1997), in which this Court held that an intoxication exclusion in an automobile rental and insurance agreement was void because it limited statutorily required liability coverage. The plaintiff also asserts that cases from other jurisdictions have declared self-insurance void as against public policy. <u>See</u> <u>Commercial Union Insurance Co. v. Insurance Co. of North America</u>, 273 S.E.2d 24, 27, 28 (Ga. Ct. App. 1980); <u>Thomas v. Petrolane Gas Service Limited Partnership</u>, 588 So. 2d 711, 720 (La. Ct. App. 1991).

Columbia responds that § 42-14.1-2(a) does not prohibit healthcare providers from self-insuring and, in fact, "expressly provides that a health care provider may be self insured." Thus, Columbia argues, "that § 42-14.1-2 specifically authorizes the self-insurance of health care facilities conclusively establishes that the SIR [Endorsement] of the Columbia Policy does not violate public policy." Columbia notes that the DBR has not promulgated any regulations setting forth the financial prerequisites for self-insurance; and it argues that "if the General Assembly had wanted to proscribe the use of self-insurance by health care providers until the DBR promulgated appropriate regulations it could easily have stated as such, which would have placed insurers on notice." Finally, Columbia asserts that the case law cited by plaintiff is either distinguishable or inapplicable. In particular, Columbia contends that self-insurance is fundamentally different from the intoxication exclusion that this Court held violated public policy in <u>Ryan</u>, 695 A.2d at 992, because an exclusion "operates to bring a covered loss outside

of coverage," whereas a "satisfaction of an SIR is a condition precedent of coverage." Finally, Columbia argues that the two cases cited by plaintiff from outside this jurisdiction are inapplicable because in both of those cases the parties failed to demonstrate that the insureds had satisfied the relevant requirements for self-insurance under those states' laws. See Commercial Union Insurance Co., 273 S.E.2d at 27; Thomas, 588 So. 2d at 721.

Although plaintiff emphasizes public policy in urging that this Court declare the present SIR Endorsement void, we need not undertake a public policy analysis here because we read § 42-14.1-2(a) to preclude Rhode Island healthcare providers from self-insuring unless and until the DBR promulgates regulations setting forth parameters for self-insurance. As we have noted on various occasions, "[w]hen the language of the statute is clear and unambiguous, it is our responsibility to give the words of the enactment their plain and ordinary meaning." Mendes, 41 A.3d at 1002 (quoting Generation Realty, LLC, 21 A.3d at 259). Here, the statutory language at issue provides that the DBR director is "authorized to establish rules and regulations allowing persons or entities with sufficient financial resources to be self-insurers." Section 42-14.1-2(a) (emphasis added). Having carefully read that provision, we conclude that before any self-insurance may be incorporated into an insurance policy governed by § 42-14.1-2(a), the DBR first must promulgate a regulatory framework expressly "allowing" for self-insurance. In particular, we note that the General Assembly employed the term "allow," which the American Heritage Dictionary defines as "[t]o let do or happen; permit" or, alternatively, "[t]o make provision for; assign." American Heritage Dictionary of the English Language 48 (4th ed. 2000). Under these definitions of the term "allow," before a Rhode Island healthcare provider lawfully may self-insure, the DBR is required to take the affirmative step of "allowing" self-insurance and defining the conditions under which "persons or entities" possess "sufficient financial resources

to be self-insurers." See § 42-14.1-2(a). Thus, unless and until the DBR promulgates regulations that expressly make provision for self-insurance by healthcare providers, by its plain language, the final sentence of § 42-14.1-2(a) does not permit the SIR Endorsement that appears in the Columbia policy.

This reading of the statute also comports with the treatment of Rhode Island self-insurers in other contexts. For example, § 31-33-9 allows for any person with a fleet of more than twenty-five vehicles to self-insure, but only upon "obtaining a certificate of self-insurance issued by the division of motor vehicles," which may be obtained only if the Division of Motor Vehicles is "satisfied that the person is possessed and will continue to be possessed of the ability to pay judgment obtained against the person." Thus, in the automobile insurance context, § 31-33-9 requires that, as a condition precedent to self-insurance, the Division of Motor Vehicles take the affirmative steps of reviewing an applicant's financial stability and issuing a certificate of self-insurance. Similarly, in the workers' compensation context, Rhode Island law, § 28-36-1(b)(1), permits covered employers to "apply for approval to self insure," but it requires, among other things, that the employer "furnish[] to the director of labor and training satisfactory proof of his or her financial ability to pay directly to injured employees or their dependents the compensation, and by furnishing security, indemnity, or a bond in kind and in amount satisfactory to the director." Section 28-36-1(a)(2)(i). Therefore, as with automobile self-insurance, before an employer may self-insure, it must demonstrate financial responsibility, and the relevant state agency must act upon that employer's application. Although the General Assembly's directive to the DBR about the circumstances under which it may permit self-insurance by healthcare providers was far less detailed and specific than its directives to the Division of Motor Vehicles and the Department of Labor and Training, we nonetheless conclude,

- 11 -

based on the plain language of § 42-14.1-2(a), that, before Rhode Island healthcare providers may self-insure, the DBR is required to first take the affirmative step of "establish[ing] rules and regulations allowing persons or entities with sufficient financial resources to be self-insurers."

We also note that some authorities have characterized self-insurance as "the antithesis of insurance" because it fails to shift the risk of loss away from the insured, and we agree with the general proposition that "[t]o meet the conceptual definition of self-insurance, an entity would have to engage in the same sorts of underwriting procedures that insurance companies employ." 1A Steven Plitt et al., Couch on Insurance 3d § 10:1 & n.1 (rev. ed. 2010). Here, the record is devoid of any indication that any effort was undertaken to ascertain Haven Health's risk of loss and financial ability to meet that potential loss. Moreover, we believe that the fact that Haven Health filed for bankruptcy protection less than a year and a half after the Columbia policy was issued would bring into question whether at the time the Columbia policy became effective, Haven Health was in a financial position to adequately self-insure against the first $2 million of loss pursuant to the SIR Endorsement.

Because the DBR has not yet promulgated "rules and regulations allowing persons or entities with sufficient financial resources to be self-insurers," we hold that the Columbia policy's SIR Endorsement is invalid under § 42-14.1-2(a). Therefore, plaintiff may recover from Columbia, even though her judgment against Haven Health does not exceed the $2 million SIR Endorsement amount.

**B**

**Mandatory Minimum Policy Limits Under § 42-14.1-2 and Insurance Regulation 21**

The plaintiff argues that § 42-14.1-2(a)[13] or Insurance Regulation 21,[14] or both, mandate minimum coverage requirements of $100,000 per claim, $300,000 in the aggregate, for all professional liability policies issued to Rhode Island healthcare providers. Columbia responds that there is no such statutory mandate because the statute authorizes, but does not require, the DBR to act, and the minimum coverage requirements set forth in the statute will become effective if, and only if, the DBR exercises its discretion by promulgating rules and regulations setting minimum coverage levels. Additionally, Columbia asserts that Insurance Regulation 21's general reference back to the statute does not constitute an exercise of that agency's discretion and thus does not convert the statute's permissive minimum coverage requirements into mandatory ones.

We note that at no point during this proceeding has plaintiff asserted that she is entitled to recover any damages in excess of the per-claim minimum coverage limit of $100,000 that she

---

[13] General Laws 1956 § 42-14.1-2(a) provides, in pertinent part, as follows:

> "The director of business regulation shall promulgate rules and regulations requiring all licensed medical and dental professional[s] and all licensed health care providers to be covered by professional liability insurance insuring the practitioner for claims of bodily injury or death arising out of malpractice, professional error, or mistake. The director of the department of business regulation is hereby authorized to promulgate regulations establishing the minimum insurance coverage limits which shall be required; provided, however, that such limits shall not be less than one hundred thousand dollars ($100,000) for claims arising out of the same professional service and three hundred thousand dollars ($300,000) in the aggregate."

[14] The portion of Insurance Regulation 21 highlighted by plaintiff provides that "[a]ny insurer authorized to write medical malpractice insurance in this State shall be allowed to do so subject to the provisions of * * * [G.L. 1956 chapter 14.1 of title 42]." 11-5 R.I. Admin. Code R. § 21:4(D).

contends § 42-14.1-2(a) requires.[15]  The plaintiff also represented to this Court during oral arguments that she was seeking only the purported per-claim minimum coverage amount because it was her position that § 42-14.1-2(a) would not require Columbia to pay any amounts above and beyond that statutory minimum.  Because plaintiff consistently has taken the position that she is entitled only to $100,000 of her damages award (plus interest), we need not determine whether that statute actually limits her recovery in this way.  We already have determined the SIR Endorsement in the Columbia policy to be invalid, and we hold that plaintiff should receive the $100,000 in damages to which she consistently has argued she is entitled.  Thus, we need not determine whether the $100,000 per-claim minimum specified in § 42-14.1-2(a) currently is mandatory (and therefore applicable to all policies insuring Rhode Island healthcare providers), or whether it becomes effective only if and when the DBR exercises its discretion by promulgating regulations setting forth minimum professional liability insurance coverage requirements for healthcare providers.

## C

### Separate Treatment of Insureds Under the Policy

On appeal, plaintiff argues that because § 42-14.1-2(a) requires "all licensed medical and dental professional[s] and all licensed health care providers" to maintain at least $100,000 liability coverage per claim, Columbia is obligated to cover $200,000 of plaintiff's total damages award—$100,000 for the claim against Haven Health, a licensed healthcare provider, and $100,000 for the claim against Hardesty, a licensed medical professional. (Emphasis added.)

---

[15] The plaintiff does, however, argue that Columbia is obligated to provide this minimum coverage for Haven Health and Hardesty separately, thus requiring Columbia to pay $200,000 of plaintiff's total damages award.  Still, she does not assert that she is entitled to any amount greater than the ostensible statutory minimum for her claims against each insured.  We consider this to be a separate and distinct argument, which we address infra.

The plaintiff points to case law from other jurisdictions to support her reading of the word "and" in § 42-14.1-2(a). See Lewinski v. Commonwealth, 852 A.2d 1270, 1277 (Pa. Commw. Ct. 2004) (deferring to the Pennsylvania Insurance Department's determination that "'shared limits' policy language violated the [statutory] requirement that the professional corporation maintain separate basic liability coverage"); Haislip v. Southern Heritage Insurance Co., 492 S.E.2d 135, 137 (Va. 1997) (holding that a Virginia statute mandating that motor vehicle insurance policies "contain 'a provision insuring the named insured, and any other person using * * * the motor vehicle * * *'" required the insurer to provide separate coverage for the vehicle's owner and permissive user).

Columbia responds that plaintiff waived her right to make this argument to this Court when she failed to raise it in the first instance in the summary-judgment proceedings before the Superior Court. We agree. "It is axiomatic that this [C]ourt will not consider an issue raised for the first time on appeal that was not properly presented before the trial court." State v. Breen, 767 A.2d 50, 57 (R.I. 2001) (quoting State v. Saluter, 715 A.2d 1250, 1258 (R.I. 1998)). The plaintiff acknowledges that she did not make this argument below, but urges that we apply an exception to the raise-or-waive rule apparently recognized by some federal courts under which an appellate court will consider questions of law not posed to the trial court. See, e.g., United States v. Kin-Hong, 110 F.3d 103, 116 (1st Cir. 1997) ("While it is true that, as a general matter, federal courts of appeals do not rule on issues not decided in the district court, * * * we do have discretion to address issues not reached by the district court when the question is essentially legal and the record is complete."). However, although "[s]ome courts seem to be slightly less exigent about the raise or waive rule * * *, this Court has remained quite exigent with respect to the raise or waive rule * * * and we continue to believe that the rule is jurisprudentially sound." Pollard v.

<u>Acer Group</u>, 870 A.2d 429, 433 n.11 (R.I. 2005).  Here, plaintiff had the opportunity to make this argument when she moved for summary judgment against defendant, but she failed to do so.[16]  Thus, because plaintiff did not present this argument to the hearing justice below, we hold that plaintiff waived her right to assert this argument here, and her recovery for damages is limited to the $100,000 claim amount that she asserted below.

**D**

**Prejudgment and Postjudgment Interest**

Finally, the parties disagree as to the amount of prejudgment and postjudgment interest that Columbia is required to pay pursuant to the policy language.  The "Supplemental Payments" section of the Columbia policy provides that "[Columbia] will pay with respect to any 'claim' * * * prejudgment interest and postjudgment interest that is awarded in connection with a judgment made against the Insured, or that portion of the judgment that is within the applicable limits of insurance."  The parties disagree on the meaning of this provision.  The plaintiff argues that because a comma and the disjunctive term "or" separate the initial clause establishing

---

[16] The plaintiff attempts to draw a distinction between her case and the well-established case law from this Court, arguing that in other cases the raise-or-waive rule applied because the issues should have been raised <u>at</u> <u>trial</u>, whereas here, the case was disposed of through summary judgment and thus issues "remain open to the Superior Court for decision upon remand * * *." However, it is clear that when plaintiff moved for summary judgment below, she sought complete resolution of all her claims against Columbia, and thus intended her motion to be a complete statement of her legal arguments.  For example, although plaintiff titled her motion a "partial" motion for summary judgment, she also sought Rule 54(b) certification of final judgment on all claims against Columbia.  <u>See</u> Rule 54(b) of the Superior Court Rules of Civil Procedure (permitting an entry of final judgment as to some but not all parties or claims). Additionally, plaintiff argued to the lower court that her "motion for partial summary judgment [against Columbia] [was] distinct and separate from the remaining claims brought against the owners of the nursing facility in attempting to pierce the corporate veil," further indicating that she was seeking complete resolution of any and all claims she may have had against Columbia. Thus, because we conclude that plaintiff intended to adjudicate all of her claims against Columbia through this motion, rather than preserving some for trial, our established case law applying the raise-or-waive rule to issues that could have been raised at trial applies with equal force here.

Columbia's obligation to pay prejudgment and postjudgment interest from the final clause limiting interest to the amount of the judgment that falls within the policy limits, the policy provision actually sets out two alternative methods for determining interest (one that permits interest based on the full amount of the judgment, and a second that limits the interest calculation to only that portion of the award that is within the policy limits). The plaintiff asserts that she should be able to benefit from the method for interest calculation that is most advantageous to her. Alternatively, plaintiff argues that the two clauses, taken together, create an ambiguity that should be construed in her favor. Thus, plaintiff asserts, Columbia is obligated to pay $100,000 toward plaintiff's damages award as well as prejudgment and postjudgment interest calculated on the basis of the <u>total</u> damages award, <u>i.e.</u>, $256, 881.

Columbia, on the other hand, maintains that the final clause of this policy provision modifies the preceding clause, thereby limiting prejudgment and postjudgment interest to only that portion of the judgment actually covered by the policy. Thus, Columbia argues, any prejudgment and postjudgment interest that it is obligated to pay must be determined with reference only to $100,000 of plaintiff's damages, not the entire judgment amount.

"It is well established that this [C]ourt applies the rules for construction of contracts when interpreting an insurance policy * * * ." <u>Lynch v. Spirit Rent-A-Car, Inc.</u>, 965 A.2d 417, 425 (R.I. 2009) (quoting <u>Mallane v. Holyoke Mutual Insurance Co. in Salem</u>, 658 A.2d 18, 20 (R.I. 1995)). "The necessary prerequisite to this Court's departure from the literal language of a policy is a finding that the policy is ambiguous. In order to make such a determination of ambiguity, we read a policy in its entirety, giving words their plain, ordinary, and usual meaning." <u>Sjogren v. Metropolitan Property and Casualty Insurance Co.</u>, 703 A.2d 608, 610 (R.I. 1997). "We do not engage in 'mental gymnastics * * * to read ambiguity into a policy where

- 17 -

none is present.'" Id. (quoting Mallane, 658 A.2d at 20). "If, however, a policy's terms are ambiguous or capable of more than one reasonable meaning, the policy will be strictly construed in favor of the insured and against the insurer." Id.

To support her argument, the plaintiff cites to Fratus v. Republic Western Insurance Co., 147 F.3d 25, 27 (1st Cir. 1998). There, the First Circuit held that policy language requiring the insurer to pay "[a]ll interest accruing after the entry of judgment" unambiguously obligated the insurer to pay interest on the full amount of the judgment (over $3 million), rather than on only that portion of the judgment that was within the policy's coverage limit ($25,000). Id. at 27, 28-29. By contrast, here, the Columbia policy language is not as sweeping or general, and we disagree with the plaintiff's argument that the policy provides for two alternate methods for determining how much interest is owed. Instead, we are of the opinion that a fair reading of the policy provision limits Columbia's obligation to pay interest only on that portion of the award that falls within the policy limits. Thus, because we hold that the plaintiff is entitled to receive $100,000 under the policy, see Section III, B, supra, prejudgment and postjudgment interest in this case must be calculated on the basis of that limited amount rather than on the full amount of the plaintiff's judgment against Haven Health and its affiliated entities.

## IV

### Conclusion

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court, and we remand the record to the Superior Court with instructions to enter judgment in favor of the plaintiff for $100,000, plus prejudgment and postjudgment interest calculated on the basis of that amount.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    Tracie Peloquin, as Administratrix of the Estate of Pearl E. Archambault v. Haven Health Center of Greenville, LLC et al.

**CASE NO:**    No. 2011-130-Appeal.
(PC 06-6322)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    January 14, 2013

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**    Associate Justice Paul A. Suttell

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Stephen P. Sheehan, Esq.

For Defendant:  Douglas K. Eisenstien, Esq.
Pro Hac Vice